J-S02030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: S.S.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.O., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2598 EDA 2024 |

Appeal from the Decree Entered September 12, 2024
In the Court of Common Pleas of Bucks County Orphans' Court at No(s):
2024-A9065

BEFORE:  LAZARUS, P.J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY DUBOW, J.:                     **FILED MARCH 18, 2025**

Appellant, A.O. ("Mother") appeals from the September 12, 2024 order entered in the Bucks County Court of Common Pleas that terminated her parental rights to her now-2-year-old child, S.S.F. ("Child").[1]  Mother's counsel, Katrina Ihrer, Esq., has filed a petition to withdraw as counsel and an ***Anders*** brief,[2] to which Mother has not filed a response.  Upon review, we grant Attorney Ihrer's petition to withdraw and affirm.

**A.**

---

[1] Child's birth certificate does not identify a father, but Mother has identified T.F., II, as Child's father ("Putative Father").  The Agency sought termination of the parental rights of Mother, Putative Father, and John Doe, Child's biological father.  The court ultimately terminated the parental rights of Putative Father, who is not a party to this appeal, and John Doe.

[2] ***Anders v. California***, 386 U.S. 738 (1967).

We glean the relevant factual and procedural history from the trial court opinion and the certified record. The Bucks County Children and Youth Social Services Agency ("the Agency") first became involved with the family of Mother and Putative Father in May 2014 due to concerns regarding their substance abuse. Child was born in November of 2022. On December 1, 2022, the Agency received a referral reporting that Mother had tested positive for benzodiazepine, cocaine, fentanyl, and methadone, and that Child had tested positive for cocaine and methadone at birth. Child required treatment for withdrawal symptoms due to Neonatal Abstinence Syndrome.

On December 5, 2022, the Agency received a report that Mother admitted to using heroin in the hospital that was brought by Putative Father. The hospital subsequently banned Putative Father from the hospital after determining that he was also the source of unprescribed Percocet found in Mother's hospital room. Mother tested positive for cocaine and fentanyl again on December 19, 2022, after leaving the hospital.

On December 21, 2022, the court granted emergency custody of Child to the Agency. On February 6, 2023, the court adjudicated Child dependent, and the court ordered Child to remain in the agency's custody with a goal of reunification.

"Through[out] the life of the case," the Agency created the following objectives for Mother: to maintain sobriety, address her outstanding criminal cases, obtain employment and suitable housing, and participate in a parenting program. N.T. Hr'g, 9/10/24, at 14-15.

On February 1, 2023, Mother once again tested positive for cocaine and fentanyl. Mother was then incarcerated at the Bucks County Correctional Facility ("BCCF") from February 6 to March 22, 2023. Following her release, the Agency did not know Mother's whereabouts.

On June 30, 2023, the court placed Child in her current foster home. In July 2023, the Agency learned that Mother was incarcerated at the Philadelphia Industrial Correctional Center ("PICC"), then again at BCCF from July 31 to November 14, 2023. All of Mother's incarcerations involved drug-related charges.

Following her release, Mother began inpatient drug and alcohol treatment at Malvern Treatment Center-Willow Grove. On December 6, 2023, Mother reported to the Agency that she was successfully discharged from treatment and planned to live with her mother. However, Mother's whereabouts were unknown until March 14, 2024, when the Agency learned that Mother was incarcerated at BCCF again for probation violations.

Mother has "mostly been uninvolved and out of the Child's life, whether she was incarcerated or not." Trial Ct. Op., 10/31/24, at 9. The trial court found that Mother did attend all but one biweekly visit with Child while incarcerated, but she "only attended one visit in the community with the rest

- 3 -

of her visits being while she was incarcerated or in an inpatient treatment facility."[3] *Id.*

On April 4, 2024, following a hearing, the court changed Child's permanency goal from Reunification to Adoption. On June 28, 2024, the Agency filed the instant Petition for the Involuntary Termination of Parental Rights for Mother, Putative Father, and John Doe. Mother was incarcerated at BCCF when the Agency filed the petition.

The parties proceeded to a hearing on September 10, 2024, when Child was almost 2 years old. Attorney Ihrer represented Mother, who was present.[4] Emily Ward, Esq., served as both Child's counsel and Guardian *ad Litem* ("GAL") after the court determined there was no conflict in counsel serving in the dual role. N.T. Hr'g at 11. The Agency presented testimony from Permanency Supervisor Janeen Overberger and Case Aide Amanda Kinsgdorf, and Mother testified on her own behalf.

Ms. Overberger and Ms. Kinsgdorf testified consistently with the above facts. In addition, Ms. Kingsdorf testified that Child would cry when Mother entered the room for their visits at BCCF. Ms. Overberger testified that Child is currently with a pre-adoptive foster family, that she is doing "wonderful[ly]" there, that her foster family keeps in contact with Mother's relatives, and that

_____

[3] Per the testimony of Permanency Supervisor Janeen Overberger, Mother has only attended three total visits outside of BCCF. N.T. Hr'g at 19. Accordingly, it appears that one of these three visits occurred in the community, while the other two occurred while she was in inpatient treatment.

[4] Putative Father failed to appear.

- 4 -

Child is bonded to her foster family. *Id.* at 20-23. She opined that adoption was in Child's best interest and that Child would not suffer irreparable harm if the court terminated Mother's parental rights because she does not have a bond with Child.

In addition, the GAL testified that she was in favor of termination. She explained that Child gets along well with foster siblings, is growing well, and has been receiving all necessary medical care. *Id.* at 63-64. Finally, she explained that Child has "essentially been in limbo her entire life at this point and she absolutely deserves permanency. I think for that reason alone the Agency's petition serves her best and legal interest." *Id.* at 64.

Mother also testified that she has maintained sobriety while incarcerated and that she planned to live with friends in Royersford, Pennsylvania, following her incarceration while she remained on a waitlist for housing through a Bucks County Opportunity Council program. Finally, she testified that her recent incarcerations in Bucks County were for drug paraphernalia and that she had pending charges in Philadelphia as well.[5]

Following the hearing, the court issued the decree terminating the parties' parental rights.

**B.**

---

[5] In questioning Mother, the court noted that it read in the Pre-Hearing Statement that Mother's Philadelphia case was for Possession with Intent to Deliver a Controlled Substance. N.T. Hr'g at 50.

Mother timely appealed. Both Mother and the trial court complied with Pa.R.A.P. 1925.

On December 2, 2024, Attorney Ihrer filed an *Anders* brief indicating that, upon review, Mother's appeal is wholly frivolous. Mother did not respond.

In the *Anders* brief, Attorney Ihrer indicated that Mother wished to raise the following issue for our review:

> Did the trial court commit an error of law and abuse of discretion by involuntarily terminating A.O.'s parental rights?

*Anders* Br. at 3.

## C.

As a preliminary matter, we address appellate counsel's request to withdraw as counsel. "When presented with an *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." *Commonwealth v. Daniels*, 999 A.2d 590, 593 (Pa. Super. 2010). To withdraw from an appeal pursuant to *Anders*, our Supreme Court has determined that counsel must meet the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

- 6 -

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009).

Attorney Ihrer has complied with the mandated procedure for withdrawal. Additionally, she confirms that she sent Mother a copy of the *Anders* brief and petition to withdraw, as well as a letter explaining to Mother that she has the right to retain new counsel, proceed *pro se*, and to raise any additional points. *See Commonwealth v. Millisock*, 873 A.2d 748, 751-52 (Pa. Super. 2005) (describing notice requirements).

Because counsel has satisfied the above requirements, we will address the substantive issue raised in the *Anders* brief. We must "make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Santiago*, 978 A.2d at 355 n.5 (citation omitted); *see also Commonwealth v. Yorgey*, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*) (noting *Anders* requires the reviewing court to "review 'the case' as presented in the entire record with consideration first of issues raised by counsel").

**D.**

In cases involving the involuntary termination of parental rights, our review is limited to determining whether the trial court's conclusion is supported by competent evidence. *In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021). When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings

- 7 -

are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). We may not reverse "merely because the record would support a different result." *T.S.M.*, 71 A.3d at 267. We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." *Id.* "The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

It is axiomatic that "[p]arents enjoy a fundamental right to make decisions regarding the care, custody and control of their children. It cannot be denied that significant and permanent consequences for both the parent and child can follow the termination of parental rights, as there is an undeniable importance in a child's relationship with a biological parent." *L.A.K.*, 265 A.3d at 591 (internal citations omitted). Accordingly, "[i]n recognition of the gravity attendant to the termination of parental rights, the moving party must establish the statutory grounds by clear and convincing evidence; that is, evidence that is so clear, direct, weighty and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* at 592 (citations and quotation marks omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights, and requires a bifurcated analysis. "Initially, the focus is on the conduct of the parent." *In re Adoption of A.C.,* 162 A.3d 1123, 1128 (Pa. Super. 2017) (citation omitted). As discussed above, "[t]he party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." *Id.* (citation omitted). If the court determines that the parent's conduct warrants termination of his or her parental rights, the court then engages in "the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." *Id.* (citation omitted). Notably, we need only agree with the court's decision as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm the termination of parental rights. *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008). We concentrate our analysis in this case on Section 2511(a)(2).

Section 2511(a)(2) provides for termination of parental rights where the petitioner demonstrates by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S. § 2511(a)(2); *In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012). The grounds for termination of parental rights under Section

2511(a)(2) due to parental incapacity are not limited to affirmative misconduct; "those grounds may [also] include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (citation omitted), *abrogated on other grounds by In re K.T.*, 296 A.3d 1085 (Pa. 2023). "Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *In re C.M.K.*, 203 A.3d 258, 262 (Pa. Super. 2019). Notably, a "parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re Z.P.*, 994 A.2d 1108, 1118 (Pa. Super. 2010) (citation omitted).

With respect to incarcerated parents, our Supreme Court has held that "incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing essential parental care, control, or subsistence." *S.P.*, 47 A.3d at 830 (citation and internal quotation marks omitted). "[I]ncarceration alone is not sufficient to support termination under any subsection[,]" but "incarceration will certainly impact a parent's capability of performing parental duties, and may render a parent incapable of performing parental duties under subsection (a)(2)[.]" *In re E.A.P.*, 944 A.2d 79, 82-83 (Pa. Super. 2008) (emphasis omitted).

Finally, "sincere efforts to perform parental duties" may still be insufficient to remedy an incapacity. *Z.P.*, 994 A.2d at 1117 (citation omitted). This is because subsection (a)(2) "emphasizes the child's present

- 10 -

and future need for essential parental care, control or subsistence necessary for his physical or mental well-being[,]" especially "where disruption of the family has already occurred and there is no reasonable prospect for reuniting it." *Id.* (citation omitted).

*

The trial court found that Mother's actions have caused Child to be without essential parental care, control or subsistence essentially since birth. Trial Ct. Op. at 7-9. Specifically, the court determined that

> since [Child] became known to the Agency, Mother has undergone multiple periods of incarceration. The record shows that Mother's repeated incarcerations and continued failure to be present for [Child] caused [Child] to be without essential care and subsistence for almost her entire life. Even during periods when Mother was released from incarceration, she has failed to take the opportunities the Agency had provided to her to make any effort in reunification with [Child].

*Id.* at 8. Furthermore, the court found that Agency showed by clear and convincing evidence that Mother has been unable to remedy the issues that led to the removal of Child from her care. *Id.* Specifically, Mother has "not addressed [her] substance abuse issues, continued to test positive for illicit substances on [her] drug tests, failed to meet regularly with the Agency caseworker, and failed to engage in any resources or services that the Agency sought for [her]." *Id.* at 9. Mother has also "never demonstrated stable housing nor stable sources of income[,]" and "has an extensive criminal history of multiple drug-related offenses[,]" including an active case in Philadelphia. *Id.*

In addition, the court noted that it "is not certain how much credit to give Mother" for her sobriety during incarceration because, although "controlled substances find their way into prisons," it "generally. . .should not be difficult" to remain sober in custody. *Id.* at 11. Finally, the court noted that Mother "suggested repeatedly in the proceeding that she 'intends' to be a good parent to her daughter upon her release." *Id.*

Based on our review, we conclude that the trial court properly exercised its discretion in terminating Mother's parental rights. The record indicates that Mother has struggled with substance abuse throughout Child's life, that she has incurred multiple drug-related cases, that she has spent significant time incarcerated, and that she lacks stable housing. Furthermore, Mother attended visits with Child while incarcerated, but when not incarcerated, Mother attended few visits with Child and did not make her whereabouts known to the Agency. Accordingly, the record supports the trial court's findings that Mother refused to provide essential parental care for Child. Thus, we discern no abuse of discretion in the trial court's termination of Mother's parental rights pursuant to Section 2511(a)(2).

**E.**

Regarding Section 2511(b), our analysis focuses on the effect that terminating the parental bond will have on the child. We review "whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010). It is well settled that "[i]ntangibles such as

love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005).

"One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond." *In re Adoption of N.N.H.*, 197 A.3d 777, 783 (Pa Super. 2018) (citation omitted). The fact that a child has a bond with a parent "does not preclude the termination of parental rights." *In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014). Rather, the trial court must examine the depth of the bond to determine whether the bond is so meaningful to the child that its termination "would destroy an existing, necessary, and beneficial relationship." *Id.* at 898 (citation omitted). Moreover, the trial court may consider "intangibles, such as the love, comfort, security, and stability the child might have with the [adoptive resource]." *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted). Ultimately, the concern is the needs and welfare of the child. *Z.P.*, 994 A.2d at 1121. "Finally, in cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re Q.R.D.*, 214 A.3d 233, 243 (Pa. Super. 2019) (citation and internal quotation marks omitted).

\*

The trial court concluded that termination of Mother's parental rights is in Child's best interest. Trial Ct. Op. at 13-14. It found that

The evidence supports a finding that Mother has failed to provide [Child] with adequate means of support and care. While some of these instances were due to Mother's incarceration, Mother has also failed to provide [Child] with adequate means of support and care when she was not incarcerated. The record demonstrates that [Child's] needs are properly cared for in her foster parent's home. Furthermore, the evidence heard before the [c]ourt demonstrates the bond between Mother and [Child] was nearly nonexistent. As mentioned *supra*, Mother was incarcerated throughout [Child's] life and has made little to no effort to reconnect and bond with [Child,] despite numerous attempts by the Agency at reconciliation. Any potential harm of severing the bond between [Child] and Mother is heavily outweighed by the benefit of permanency and stability for [Child]. As a result, this [c]ourt finds that termination would not destroy an existing, necessary, and beneficial relationship.

*Id.* at 13.

The record supports the trial court's findings. The court heard undisputed testimony that Child has a secure bond with her pre-adoptive foster parents, who meet all her needs, and that it would not be detrimental to Child if Mother's parental rights were terminated. N.T. Hr'g at 20-23, 36, 63-64. Accordingly, we discern no abuse of discretion.

**F.**

Following our review of the issues raised in counsel's ***Anders*** brief, we agree with counsel that the trial court did not abuse its discretion in terminating Mother's parental rights. In addition, our independent review of the proceedings reveals there are no issues of arguable merit to be raised on

appeal.  Accordingly, we grant Attorney Ihrer's petition to withdraw as counsel and affirm the order terminating Mother's parental rights.

Order affirmed. Petition to withdraw as counsel granted.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 3/18/2025